# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

22-1004

## UNITED STATES OF AMERICA,

Appellee,

v.

## PAISLEY ROSE MARIE MICHELS,

Appellant.

*APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF IOWA
HONORABLE STEPHANIE M. ROSE, U.S. DISTRICT COURT JUDGE*

### APPELLANT'S BRIEF

**Joseph G. Bertogli**
300 Walnut Street, Suite 270
Des Moines, IA 50309
PHONE: (515) 244-7820
FAX: (515) 244-9125

ATTORNEY FOR APPELLANT

## SUMMARY OF THE CASE

Defendant, Paisley Rose Marie Michels (hereinafter "Michels"), was found to have committed several violations of her supervised release and was sentenced to 18 months with 18 months supervised release to follow.

Michels appeals whether the court's sentence was substantively reasonable.

Appellate Case: 22-1004    Page: 2    Date Filed: 02/07/2022 Entry ID: 5124488

# TABLE OF CONTENTS

SUMMARY OF THE CASE...................................................................2

TABLE OF AUTHORITIES ..............................................................4

JURISDICTIONAL STATEMENT ........................................................6

STATEMENT OF THE ISSUE PRESENTED FOR REVIEW .............................7

STATEMENT OF THE CASE..............................................................8

SUMMARY OF THE ARGUMENT ....................................................11

ARGUMENT ..............................................................................12

    I.    MICHELS'S 18 MONTH SENTENCE ALONG WITH
        18 MONTHS OF SUPERVISED RELEASE WAS
        SUBSTANTIVELY UNREASONABLE…………………..…… ….12

CONCLUSION...........................................................................25

CERTIFICATE OF FILING AND SERVICE .........................................26

Fed. R. App. P. 32(a)(7) AND 8th CIR. RULE 28A(c) CERTIFICATION...........27

Appellate Case: 22-1004    Page: 3    Date Filed: 02/07/2022 Entry ID: 5124488

# TABLE OF AUTHORITIES

**Cases:**

*Gall v United States,* 552 US 38 (2007)…………………………………….……….…13

*Tapia v United States,* 564 US 319 (2011)…………………………..21, 22, 23, 24

*United States v. Dautovic*, 763 F.3d 927 (8th Cir. 2014)……………….…..….……13

*United States v. Green*, 691 F.3d 960 (8th Cir. 2012)…………………….…..…12

*United States v Growden,* 663 F 3d 982 (8th Cir. 2011)……………….…..…….13

*United States v. Jeffries*, 615 F.3d 909 (8th Cir. 2010)……………………….…..12

*United States v. Kane*, 639 F.3d 1121 (8th Cir. 2011)…………………………..12

*United States v. Manning*, 738 F.3d 937 (8th Cir. 2014)…………………….…..…12

*United States v. Martinez*, 821 F.3d 984 (8th Cir. 2016)…………………….…..13

*United States v. Miller*, 557 F.3d 910 (8th Cir. 2009)…………………….…......12

*United States v. Miner*, 544 F.3d 930 (8th Cir. 2008)………………..……...12, 13

*United States v. Pizano*, 403 F.3d 991 (8th Cir. 2005)…………………….…..…12

*United States v. Shuler*, 598 F.3d 444 (8th Cir. 2010)……………………..…..12

*United States v Tapia,* 376 Fed Appx. 707 (9th Cir. 2010)…………..………….12

**Statutes:**

21 U.S.C. § 1952(a)(3)(A)……………………………………………………8

18 U.S.C. § 3231……………………………………………………..………6

Appellate Case: 22-1004    Page: 4    Date Filed: 02/07/2022 Entry ID: 5124488

18 U.S.C. § 3553(a)……………………………………………..………12, 16, 17, 24

18 U.S.C. § 3533(e)……………………………………...…………...………24

28 U.S.C. § 1291………………………………………………………...…6

**Other:**

USSG Section 7B1.4(a)…………………………………...….……11, 14, 24

**Rules**

Fed. R. App. P. 4(b)(1)(A)(i) .......................................................................6

# JURISDICTIONAL STATEMENT

<u>The decision appealed</u>:   Michels appeals from the judgment and sentence entered against her on December 21, 2021, in the Southern District of Iowa after being found to have committed 8 violations of the conditions of her supervised release.   Michels was sentenced to 18 months incarceration followed by 18 months of supervised release.

<u>Jurisdiction of the court below</u>:   The United States District Court had jurisdiction over Coleman's federal criminal prosecution pursuant to 18 U.S.C. § 3231: "The district courts of the United States shall have original jurisdiction . . . of all offenses against the laws of the United States."

<u>Jurisdiction of this court</u>:   This Court has jurisdiction of the appeal pursuant to 28 U.S.C. § 1291: "The courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States ....... "

Michels filed a timely notice of appeal on December 30, 2021.   *See* Fed. R. App. P. 4(b)(1)(A)(i).

Appellate Case: 22-1004     Page: 6     Date Filed: 02/07/2022 Entry ID: 5124488

# STATEMENT OF THE ISSUE PRESENTED FOR REVIEW

**I.    MICHELS'S 18 MONTH SENTENCE ALONG WITH
18 MONTHS OF SUPERVISED RELEASE WAS
SUBSTANTIVELY UNREASONABLE.**

*USSG § 7B1.4(a)*

*United States v. Miner, 544 F.3d 930 (8th Cir. 2008)*

*Tapia v United States, 564 US 319 (2011)*

*18 U.S.C. § 3553(a)*

Appellate Case: 22-1004    Page: 7    Date Filed: 02/07/2022 Entry ID: 5124488

## STATEMENT OF THE CASE

Nature of the Case[1]:   This is a direct appeal by defendant, Michels, following a stipulated finding that she was in violation of her supervised release and the resulting sentence in the Southern District of Iowa. Michels appeals her sentence.

Factual and Procedural Background:   Michels was convicted of a Travel Act violation to facilitate prostitution, in violation of 18 USC Section 1952(a)(3)(A) on February 12, 2020.   She was originally sentenced to 15 months imprisonment and 36 months supervised release.   Her current supervised release commenced on July 24, 2020. (R. Doc. 648).   The terms of her supervised release have been modified on several occasions, including on December 17, 2020 that she be placed in a residential reentry center for 120 days. (R. Doc. 569).   She began her term at the RC on January 19, 2021. (R. Doc. 610).   On March 22, 2021 her conditions of release were modified to prohibit the use of social media (R. Doc. 631).   Her conditions of supervision were again modified to require her to participate in home detention for 120 days on August 18, 2021. (R. Doc. 641).   Finally, in October of 2021, her

---

[1] In this brief, the following abbreviations will be used:
"R. Doc." — district court clerk's record, followed by docket entry and page number, where noted;
 "Tr." — Revocation hearing transcript, followed by page number.

conditions of supervised release were modified again to deny discretionary
furloughs for 2 weeks. (R. Doc. 647).

On December 1, 2021, a petition to revoke Michels's supervised release was
filed alleging the following:

| Violation | Nature of Violation |
|---|---|
| Failure to comply with home detention | After a home detention check on November 23, 2021, Michels was out of her home without permission. |
| Consumption of alcohol | On November 23, 2021, PO returned to Michels's residence to attempt another home detention check.   She was home and consented to a search of her refrigerator and freezer where a bottle of vodka was found.   She admitted to consuming alcohol. |
| New Law Violation- Failure to register as a sex offender | On November 30, 2021, PO conducted a search after being notified that Michels had been alleged to have used a fake Facebook account.   Michels admitted to creating the fake Facebook account and admitted to providing her username and passcode to her boyfriend to upload pictures and status changes. |
| Associating with a known felon | On November 30, 2021, Michels admitted to the PO that her boyfriend, Michael Fair, was a felon and sex offender with an outstanding warrant. |
| Unauthorized use of social media | Creating and using a fake Facebook identity. |
| Failure to communicate truthfully with PO | On November 30, 2021, the PO asked Michels several times about the fake Facebook account which was at first denied by Michels.   After being presented with photos of the account, |

9

| | Michels admitted to the fake account. |
|---|---|
| Failure to maintain employment | On November 30, 2021, Michels admitted that she left her employment the previous day without notifying PO first that she had obtained new employment. |

(R. Doc. 648).

The Petition to Revoke was amended by Addendum filed December 13, 2021 alleging an 8th violation for failure to follow directives of the PO because after Michels was directed to no longer have contact with Michael Fair, because of his sex offender and felon status, the US Marshal's tack force located Michels on December 8, 2021 at the registered address of Michael Fair in Davenport, Iowa.   Additionally, on December 6, 2021, she was directed by the PO to report to the Scott County Courthouse to update the Iowa Sex Offender Registry with her unregistered employment and other information and failed to do so. (R. Doc. 657).

On December 21, 2021, Michels appeared at her revocation hearing and stipulated to all of the violations included in the original Petition for Revocation as well as the Amended Petition for Revocation.   The court accepted her stipulated violations and revoked her supervised release and sentenced her to a term of imprisonment of 18 months and required her to be placed on 18 months of supervised release following her release from incarceration. (R. Doc. 664).

11

## SUMMARY OF THE ARGUMENT

On appeal, Michels challenges her 18-month sentence as well as the 18 months of supervised release to follow as unreasonable because a lesser sentence would have been sufficient under the circumstances and the sentence was greater than the guideline revocation imprisonment range pursuant to *USSG Section 7B1.4(a)* calling for 6-12 months of incarceration.

12

**ARGUMENT**

**I.  MICHELS'S 18 MONTH SENTENCE ALONG WITH 18 MONTHS OF SUPERVISED RELEASE WAS SUBSTANTIVELY UNREASONABLE.**

<u>Standard of Review</u>:   Michels challenges her sentence as substantively unreasonable.   "A defendant need not object to preserve an attack on the length of the sentence imposed if he alleges only that the District Court erred in weighing the § 3553(a) factors."   *United States v. Miller*, 557 F.3d 910, 916 (8th Cir. 2009).

Michels's sentence is reviewed for reasonableness in light of the factors set forth in 18 U.S.C. § 3553(a).   *United States v. Jeffries*, 615 F.3d 909, 910 (8th Cir. 2010); *United States v. Miner*, 544 F.3d 930, 943 (8th Cir. 2008); *United States v. Pizano*, 403 F.3d 991, 995 (8th Cir. 2005).   This is the equivalent of an abuse of discretion review.   *United States v. Green*, 691 F.3d 960, 966 (8th Cir. 2012) ("We review the substantive reasonableness of a sentence under a deferential abuse-of-discretion standard."); *accord United States v. Manning*, 738 F.3d 937, 947 (8th Cir. 2014).   This "narrow and deferential" review means that only an "unusual case" will warrant a finding of a substantively unreasonable sentence. *United States v. Shuler*, 598 F.3d 444, 447 (8th Cir. 2010).

However, substantive reasonableness review is not a "hollow gesture." *United States v. Kane*, 639 F.3d 1121, 1135 (8th Cir. 2011); *see also United States v.*

13

*Martinez*, 821 F.3d 984, 989 (8th Cir. 2016) (reversing sentence because district court erred in finding defendant was a career offender and the alternative basis for sentence, specifically an upward variance, resulted in an unreasonable sentence); *United States v. Dautovic*, 763 F.3d 927, 934-35 (8th Cir. 2014) (finding 20-month sentence substantively unreasonable). An extreme sentence that reflects an "unreasonable weighing" of the relevant sentencing factors remains subject to correction on appeal. *Dautovic*, 763 F.3d at 934–35.

"A district court abuses its discretion and imposes an unreasonable sentence when it fails to consider a relevant and significant factor, gives significant weight to an irrelevant or improper factor, or considers the appropriate factors but commits a clear error of judgment in weighing those factors." *Miner*, 544 F.3d at 932.

This Court reviews revocation sentences under the same "deferential abuse-of-discretion or standard" that "applies to initial sentencing proceedings." *United States v Growden, 663 F 3d 982, 984 (8ᵗʰ Cir. 2011), citing Gall v United States, 552 US 38, 51 (2007).*

<u>Merits</u>: Michels respectfully submits that the 18 month sentence as well as the imposition of an additional 18 months of supervised release is substantively unreasonable because the district court committed a clear error of judgment in weighing the sentencing factors including imposing a sentence outside of the

14

guideline range provided for in *USSG Section 7B1.4(a)*. In support of the 18-month

sentence the district court noted:

> "…This was a very, very serious crime at the time, and I 7 I gave the defendant a significant break at the time of original sentencing. Defendant's underlying federal offense here involved Defendant being in a relationship with yet another terrible man, Isaiah Patterson, who was serving as the defendant's pimp during the same period of time.
>
> Defendant was engaging in commercial sex acts based on responses to online escort advertisements, providing the money she earned to Patterson. She then used those same advertisements of herself and other women to extort money from potential johns by researching the johns and then threatening to reveal their interest in commercial sex to those johns' significant others unless money was paid for her silence.
>
> She then facilitated and financially benefited from commercial sex acts of other young women, both jointly with Patterson and independent of him.
>
> Among other victims of she and Patterson's sex traffic was Victim D, an 18-year-old female. Defendant posted ads for her and transported her to her sex appointments, taking half of Victim D's earnings. At one of those bookings, Victim D was made to remove all of her clothing at gunpoint while the defendant waited outside in the car.
>
> Defendant also trafficked Victim 2, who was a 19-year-old homeless female who the defendant allowed to live with she and Patterson. Defendant posted online ads for her and took 45 percent of Victim 2's earnings when she performed commercial sex acts in response to those ads. Victim 2 estimated she was trafficked six to eight times daily during the month that she lived with Defendant and Patterson.
>
> After Patterson's arrest in the case, she posted photographs of Minor Victim B and Victim 1 on Facebook, using Minor Victim B's full name, identifying her as a federal witness in a sex trafficking case where she

15

was the child victim, which made it a dangerous place for the minor victim to be and made securing her cooperation that much harder. Then after her own indictment and arrest, Defendant continued to post online escort ads and extort money from men. She was then detained and reprimanded because she continued to contact Patterson through prohibited three-way calls and letters and had a bunch of other violations while housed at the jail, including assaults and fighting and refusing to obey orders, abusing and stockpiling medications.

Nonetheless, I gave the defendant a significant break at the time of her original sentencing hearing, in no small part because she had had a very unstable and violent childhood and I 1 believed that she had the capacity, as a relatively young woman who had been trafficked herself, to make the changes that were necessary to protect herself and society.

She has grossly abused the break I gave her. She has grossly abused every break I've given her since at supervised release revocation hearings. By my count, and it's a generous count, she's violated supervised release at least 24 times that I'm aware of that's been documented and admitted to over the last 18 months, including three new felony violations for failing to register; giving birth to a child with one felon, trying to pass him off as another felon's child, and then leaving him in the care of a registered sex offender in addition to all the other things that she's done.

I believe that the defendant is absolutely manipulating the situation. I believe that she is dangerous to herself and to others, and I'm done giving her breaks. Clearly, the message that I've been trying to send has not been received, and clearly we need to reset this situation until the defendant understands how serious her crime was, how serious supervision is, how serious the rules of supervision are, and how seriously I'm going to take further violations, because she has exhausted me and she has exhausted the probation office. We are all clearly working harder to help her than she is working to help herself.

And so I do revoke her supervised release. I'm going to impose an 18-month term of imprisonment. Following that term of imprisonment, she'll be on supervised release for another 18 months. We'll have all the

Appellate Case: 22-1004    Page: 16    Date Filed: 02/07/2022 Entry ID: 5124488

same conditions of supervision that have previously been imposed…" (Tr. p. 32-35).

*18 U.S.C. Section 3553(a)* provides the following:

> (a) **Factors To Be Considered in Imposing a Sentence –** The Court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes
> set forth in paragraph (2) of this subsection.

The Court, in determining the particular sentence to be imposed, shall consider–

> (1) the nature and circumstances of the offense and the history and characteristics of the Defendant;
>
> (2) the need for the sentenced imposed–
>
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> >
> > (B) to afford adequate deterrence to criminal conduct;
> >
> > (C) to protect the public from further crimes of the Defendant; and
> >
> > (D) to provide the Defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for–
>
> > (A) the applicable category of offense committed by the applicable category of Defendant as set forth in the guidelines–
> >
> > > (i) issued by the Sentencing Commission pursuant to

17

section 994 (a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28; and

(ii) that, except as provided in section 3742(g), are in effect on the date the Defendant is sentenced; or

(B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28,. United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28;

(5) any pertinent policy statement–

(A) issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title28); and

(B) that, except as provided in section 3742(g), is in effect the date the Defendant is sentenced;

(6) the need to avoid unwarranted sentence disparities among Defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

Appellate Case: 22-1004    Page: 18    Date Filed: 02/07/2022 Entry ID: 5124488

Michels was originally sentenced to 15 months incarceration and 36 months of supervised release to follow. It is undisputed that out of all of the original co-defendants in her case, Michels was the least culpable. She came to light in the investigation because after her boyfriend, co-defendant Patterson, was arrested, she posted several photographs of a minor victim on Facebook identifying her first and last name, and that she was working with the feds and had been prostituting herself.

She began her involvement with the original case as a victim of sex trafficking by her former boyfriend, who at the time of her original sentencing was under investigation for his activities, as well as her co-defendant, Issiah Patterson. She was in a romantic relationship with both of them, having a child by her former boyfriend, Dre Jackson, and delivering a stillborn son on June 19, 2019, a child conceived during her relationship with Patterson. As developed in the PSR, Michels personal history and characteristics reveal a troubled young woman who throughout her life has lacked support and direction and began making horrible life choices in her teen years. She began as a sex trafficking victim and graduated to a facilitation of helping other girls, who in her same situation, were performing commercial sex acts. She attempted to help the women who were being prostituted by Mr. Patterson so that they would not experience the same physical and emotional trauma that she did.

19

Michels's PSR contains the graphic portrayal of her life. Those highlights include the following:

1. Environment in her formative years filled with domestic violence;

2. Alcohol and drug abuse by both parents;

3. Sexual abuse by a male cousin at age 3;

4. Her removal by the DHS due to her mother's felony conviction at age 9;

5. Physical assaults by her stepmother when sent to live with her father;

6. Her paternal grandmother's death at age 13;

7. Running away from home during her middle and high school years to escape physical abuse;

8. Being disowned by her father;

9. Her attempted suicide at age 16;

10. Her inappropriately touching her half-brother out of "revenge" on her father;

11. Her being placed in foster care due to her mother's drug abuse;

12. Her rape in the Linn County youth shelter;

13. She suffers from an ADHD diagnosis at age 7 to her multiple diagnosis of mental health conditions at St. Luke's Hospital in Cedar Rapids;

14. Another rape at age 16;

15. Her experiencing being "homeless" as a result of her mother's imprisonment for a violation of probation;

16. Her commencing a romantic relationship with a man who was more than 10 years older than her at age 17. (He was on parole for manufacturing methamphetamine in Alabama);

17. Her eventual relationship with Dre Jackson where she became the victim of domestic violence;

18. Her introduction into prostitution at the age of 21. (Jackson routinely beat her up when she was robbed while prostituting or otherwise offended him);

19. Her commencing another abusive relationship resulting in her being a victim of domestic violence and sex trafficking at the hands of Issiah Patterson;

20. She has 2 children, one of whom lives with her mother in Cedar Rapids, and the other who is being taken care of by her maternal aunt and uncle, David and Julia Carlson, in Hendersonville, Tennessee ( she plans to eventually move to Hendersonville and ultimately regain custody of her daughter). (R. Doc. 340).

A number of her violations had to do with the underlying unauthorized use of Facebook and as in her previous experiences with relationships, she continued to make horrible choices relating to her relationships with men and the reasons for those decisions have not been fully addressed in any course of treatment she has been engaged in since her original sentencing.   At the time of her revocation hearing, she was engaged in therapy attempting to address her decision making relating to her relationships with men. (Tr. p. 28-29).

Despite all of Michels's previous modifications she has received minimal mental health care and treatment.

In *Tapia v US, 564 US 319 (2011)*, the Supreme Court held that the sentencing reform act precludes courts from imposing or lengthening a prison term in order to promote a criminal defendant's rehabilitation. *Id at 321*. There, Tapia was convicted of smuggling unauthorized aliens in the United States. At sentencing the district court determined that United States Sentencing Guidelines recommended a prison term between 41-51 months for his offenses. The court decided to impose a 51 month term followed by 3 years of supervised release and in explaining its reasons the court referred several times to Tapia's need for drug treatment citing in particular the BOP RDAP program. The district court found that Tapia should serve a prison term long enough to qualify for and complete that program. Court of Appeals 9th Circuit held that the court can consider a defendant's need for rehabilitation in setting the length of a sentence. *United States v Tapia, 376 Fed. Appx. 707, 708 (9th Cir. 2010)*.

On a Petition for Writ of Certiorari the Supreme Court noted:

> "…In this case, the sentencing transcript suggests the possibility that Tapia's sentence was based on her rehabilitative needs.
>
> 2 We note first what we do not disapprove about Tapia's sentencing. A court commits no error by discussing the opportunities for rehabilitation within prison or the benefits of specific treatment or

training programs. To the contrary, a court properly may address a person who is about to begin a prison term about these important matters. And as noted earlier, a court may urge the BOP to place an offender in a prison treatment program. See supra, at 2390 – 2391. Section 3582(a) itself provides, just after the clause at issue here, that a court may "make a recommendation concerning the type of prison facility appropriate for the defendant"; and in this calculus, the presence of a rehabilitation program may make one facility more appropriate than another. So the sentencing court here did nothing wrong—and probably something very right—in trying to get Tapia into an effective drug treatment program.

But the record indicates that the court may have done more—that it may have selected the length of the sentence to ensure that Tapia could complete the 500 Hour Drug Program. "The sentence has to be sufficient," the court explained, "to provide needed correctional treatment, and here I think the needed correctional treatment is the 500 Hour Drug Program." App. 27; see supra, at 2385. Or again: The "number one" thing "is the need to **2393 provide treatment. In other words, so she is in long enough to get the 500 Hour Drug Program." App. 27; see supra, at 2385 These statements suggest that the court may have calculated the length *335 of Tapia's sentence to ensure that she receive certain rehabilitative services. And that a sentencing court may not do. As we have held, a court may not impose or lengthen a prison sentence to enable an offender to complete a treatment program or otherwise to promote rehabilitation.

For the reasons stated, we reverse the judgment of the Court of Appeals and remand the case for further proceedings consistent with this opinion. Consistent with our practice, see, e.g., United States v. Marcus, 560 U.S. 258, 266 – 267, 130 S.Ct. 2159, 2166, 176 L.Ed.2d 1012 (2010), we leave it to the Court of Appeals to consider the effect of Tapia's failure to object to the sentence when imposed. See Fed. Rule Crim. Proc. 52(b); United States v. Olano, 507 U.S. 725, 731, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)…"

In a concurring opinion, Justices Sotomayor and Alito noted:

Appellate Case: 22-1004    Page: 23    Date Filed: 02/07/2022 Entry ID: 5124488

"…Tapia faced a mandatory minimum sentence of 36 months' incarceration, Id., at 18, but her Guidelines range was 41 to 51 months, id., at 13. After reviewing the § 3553(a) factors, the judge imposed a sentence of 51 months, the top of the Guidelines range. He offered two reasons for choosing this sentence: "number one," the need for drug treatment; and "[n]umber two," deterrence. Id., at 27. With respect to the latter reason, the judge highlighted Tapia's criminal history and her criminal **2394 conduct while released on bail—which, he said, was "something that motivates imposing a sentence that in total is at the high end of the guideline range." Id., at 27–28. He concluded, "I think that a sentence less than what I am imposing would not deter her and provide for sufficient time so she could begin to address these problems." Id., at 28.

The District Judge's comments at sentencing suggest that he believed the need to deter Tapia from engaging in further criminal conduct warranted a sentence of 51 months' incarceration. Granted, the judge also mentioned the need to *337 provide drug treatment through the RDAP. The 51–month sentence he selected, however, appears to have had no connection to eligibility for the RDAP. See BOP Program Statement No. P5330.11, § 2.5.1(b) (Mar. 16, 2009) (providing that, to participate in the RDAP, an inmate must ordinarily have at least 24 months remaining on her sentence). Even the 36–month mandatory minimum would have qualified Tapia for participation in the RDAP. I thus find it questionable that the judge lengthened her term of imprisonment beyond that necessary for deterrence in the belief that a 51–month sentence was necessary for rehabilitation. Cf. S.Rep. No. 98–225, p. 176 (1983) ("A term imposed for another purpose of sentencing may ... have a rehabilitative focus if rehabilitation in such a case is an appropriate secondary purpose of the sentence").

Although I am skeptical that the thoughtful District Judge imposed or lengthened Tapia's sentence to promote rehabilitation, I acknowledge that his comments at sentencing were not perfectly clear. Given that Ninth Circuit precedent incorrectly permitted sentencing courts to consider rehabilitation in setting the length of a sentence, see ante, at 2, and that the judge stated that the sentence needed to be "long enough to get the 500 Hour Drug Program," App. 27, I cannot be certain that he

24

did not lengthen Tapia's sentence to promote rehabilitation in violation of § 3582(a). I therefore agree with the Court's disposition of this case and join the Court's opinion in full…"

The government recommended imprisonment of 12 months which was the top end of the revocation guidelines pursuant to *USSG Section 7B1.4(a)*.   The court chose to vary outside of that guideline range and impose an 18-month sentence of imprisonment followed by 18 months of further supervised release.

Michels submits that the court's reasons for doing so violated the United States Supreme Court decision in *Tapia* and failed to properly weigh the sentencing factors of *18 USC Section 3553(a)* as well as *Section 3583(e)* and was substantively unreasonable.   The district court's sentence should be reversed with directions for resentencing consistent with this Court's opinion.

Appellate Case: 22-1004     Page: 25     Date Filed: 02/07/2022 Entry ID: 5124488

## CONCLUSION

Michels respectfully requests that this Court reverse the district court's

sentence and remand this case for resentencing consistent with this Court's opinion.

Respectfully submitted,

_____/s/_____

JOSEPH G.   BERTOGLI
ICIS No. AT0000797
300 Walnut, Suite 270
Des Moines, Iowa 50309
Telephone: 515/244-7820
Facsimile: 515/244-9125

26

## CERTIFICATE OF FILING AND SERVICE

I certify that on February 4, 2022, I electronically filed the foregoing brief with the Clerk of Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. Participants in the case who are registered CM/ECF users were served by the CM/ECF system. The brief was scanned for viruses using Symantec Endpoint Protection 12.1.4013.4013. I also certify that, after receipt of notice that the brief is filed, I will serve a copy of this brief to Amy Jennings by electronic filing.

Respectfully submitted,

_____/s/_____
JOSEPH G. BERTOGLI
ICIS No. AT0000797
300 Walnut, Suite 270
Des Moines, Iowa 50309
Telephone: 515/244-7820
Facsimile: 515/244-9125

27

## Fed. R. App. P. 32(a)(7) AND 8th CIR. RULE 28A(c) CERTIFICATION

I certify that the foregoing brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7).   The brief uses a proportional space, 14 point New Times Roman font.   Based on a line count under Microsoft Word Version 14.0.7159.5000, the brief contains 678 lines and 4,762 words, excluding the table of contents, table of authorities, any addendum, and certificates of counsel.

Respectfully submitted,

_____
/s/
JOSEPH G.   BERTOGLI
ICIS No. AT0000797
300 Walnut, Suite 270
Des Moines, Iowa 50309
Telephone: 515/244-7820
Facsimile: 515/244-9125

28

Appellate Case: 22-1004     Page: 28     Date Filed: 02/07/2022 Entry ID: 5124488